Christopher R. Houk, State Bar No. 20843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile:  480.569.2379
chouk@houklawfirm.com

*Attorneys for Diane Bonitatibus*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE BONITATIBUS,<br><br>Plaintiff,<br><br>vs.<br><br>New Image Auto Glass, LLC, an Arizona Limited Liability Co., Rex Altree and John or Jane Doe Altree spouse, and Martha Guevara and John or Jane Doe Guevara, spouse.<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

New Image Auto Glass, LLC (New Image), an Arizona corporation, failed to pay overtime compensation in violation of the Fair Labor Standards Act of 1938 (FLSA), as amended and codified at 29 U.S.C. § 201 *et seq*. Plaintiff Diane Bonitatibus submits this Complaint for relief against the Defendant and Jury Trial Demand pursuant to Federal Rules of Civil Procedure (FRCP), Rules 3, 7(a)(1), 8(a), 38(b), and 39(a).

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action against under the laws of the United States, namely brought under the FLSA.

2. This Court has personal jurisdiction over New Image Auto Glass, LLC, an Arizona limited liability company because each regularly transacts business in, has significant and continuous contact with, and is domiciled in this District.

3. Venue is proper under 28 U.S.C. § 1391(b). At least one Defendant resides in this District, and all Defendants reside in the State in which the District is located. A substantial part of the acts or omissions giving rise the claims asserted herein occurred in this District.

**PARTIES**

4. At all relevant times, Plaintiff Diane Bonitatibus, is a citizen and resident of Maricopa County, Arizona who was employed by Defendant as defined in 29 U.S.C. § 203(e)(1) and as used in 29 U.S.C. § 207(a).

5. Defendant New Image is, and has been at all times relevant to this Complaint:

   A. An Arizona Corporation authorized to conduct business in Arizona within the jurisdiction of this Court and has a principal place of business is located at 480 N. 54th Street, Suite 1, Chandler, AZ 85226.

   B. An "employer" as that term is defined in 29 U.S.C. § 203(d), and used in 29 U.S.C. § 207(a);

   C. An "enterprise engaged in commerce or in the production of goods for commerce" as that term is defined in 29 U.S.C. § 203(r), (s);

   D. Owned and managed by Defendant Rex Altree and managed by Martha Guevara.

6. Defendant Rex Altree is, and has been at all times relevant to this Complaint:

A. An individual residing in Maricopa County, Arizona;

B. An "employer" as that term is defined in 29 U.S.C. § 203(d) and used in 29 U.S.C. § 207(a);

C. Upon information and belief, lawfully married to Defendant John or Jane Doe Altree, whose name will be amended upon learning of the spouse's identity, acting on behalf of their marital community; and

D. The President and CEO of New Image, acting on its behalf, whose duties included having a significant ownership interest with operational control of significant aspects of the company's day to day functions, including hiring and firing, the power to determine salaries, payroll, and the responsibility to maintain employment records. *See Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009); "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* at 1094 (citations omitted).

7. Defendant Martha Guevara is, and has been at all times relevant to this Complaint:

A. An individual residing in Maricopa County, Arizona;

B. An "employer" as that term is defined in 29 U.S.C. § 203(d) and used in 29 U.S.C. § 207(a);

  C. Upon information and belief, lawfully married to Defendant John or Jane Doe Guevara, whose name will be amended upon learning of the spouse's identity, acting on behalf of their marital community; and

  D. The Chief Operating Office of New Image, acting on its behalf, whose duties included having operational control of significant aspects of the company's day to day functions, including hiring and firing, the power to determine salaries, payroll, and the responsibility to maintain employment records. She was acting CEO for a period of time after the CEO's injury in March 2020. *See Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009); "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* at 1094 (citations omitted).

8. The John and Jane Doe Defendants are named solely because of Arizona's community property laws.

### Fact Allegations in Support of All Counts

9. On December 27, 2018, Diane started with New Image as a Senior Executive Assistant to Defendant CEO Rex Altree.

10. Diane's job was secretarial, working in a way that did *not* involve more than skillfully applying well established techniques, procedures, or standards established by the company.

11. 50% of Diane's workload included:

  i. Answering phone calls to the CEO,

    ii. Answering own emails and CEO's emails when appropriate as his assistant;

    iii. Answering CEO's business cell phone text messages and phone calls when appropriate as his assistant;

    iv. Organizing the CEO's calendar;

    v. Minor accounting, including using QuickBooks to create invoices she sent to customers; the company accountant was ultimately responsible for the accounting functions of the company;

    vi. Printing predetermined paperwork for customers and credit card receipts when customers came for their appointments;

    vii. Fielding calls directed to her desk phone and redirecting calls to the appropriate person on the team;

    viii. Ordering supplies for Rex's chip repair company to be used to fulfill orders for auto glass repair;

    ix. Ordering office supplies;

    x. Organizing office needs such as repairs and maintenance, but not deciding on the merchandise to be bought, stocked, and sold;

    xi. Filing;

    xii. Printing; and

    xiii. Organizing the CEO's office set up.

12. Diane spent the other 50% of her workday assisting the CEO in company-related projects that the CEO directed, supervised, and controlled and performed secretarial duties such as taking notes.

13. Diane's primary job duties were not exempt from the requirements of the FLSA.

14. In the performance of her job duties,

    A. Diane was not allowed the exercise of independent discretion. She was at all times directed to perform her task according to guidelines set forth by her employer.

    B. The accounting work that Diane performed was occasional and infrequent. In completing the account tasks, Diane's work was reviewed and edited by the company's accountant. Diane did *not* control any budgeting or monitor any legal compliance issues that otherwise arise in accounting settings.

    C. Diane did *not* have authority to advise or provide consultation to the company's clients or the company itself.

15. Diane did *not* have authority to make any hiring, firing, advancement, or promotion decisions for other employees, unless directed by HR. For about three months, Diane managed one part-time employee and one full time employee, both of whom performed front desk secretarial duties. For the remainder of the time at the company, Diane managed only the full time employee.

    A. In managing the employee, Diane merely directed their work. She did *not* have authority to:

        i. set and adjust their rates of pay and hours of work;

        ii. supervise their sales;

        iii. appraise their productivity to recommend change in their employment status;

        iv. handle employee grievances;

        v. discipline employees;

      vi. plan, determine, or apportion employee work;

      vii. control techniques used for work; or

      viii. provide for employee safety on site.

16. New Image initially paid Diane an hourly rate of $23.08 per hour.

17. In June 2019, Diane became a salaried employee and received a raise to $1,404 per week, or $35.10 per hour (with an annual salary of $73,008). As a salaried employee, Diane's job duties were essentially the same as before.

18. On March 20, 2020, Diane took a 25% salary decrease to $1,050 per week, or $26.25 per hour, in a company-wide pay cut to salaried employees during the Covid-19 pandemic.

19. In March 2020, Defendant Rex stopped coming into work due to an injury he suffered. While Rex was out of the office recovering from his injury, Martha moved Diane to work at the front desk. At the front desk, Diane's duties remained the same except that she was only occasionally assisted Rex in performing business projects. Diane worked the front desk position until Rex returned to work after treatment in July 2020.

20. In July 2020, Diane resumed her position as Rex's assistant.

21. Martha terminated Diane saying Diane was not "large" enough to support Rex's needs when he was in the office.

22. After becoming salaried, New Image was legally obligated to pay overtime hours, and New Image benefitted from the overtime hours Diane worked.

23. Since sometime after becoming salaried, Diane regularly worked for New Image without being paid overtime compensation for all the hours she worked in excess of 40 hours in a workweek.

24. Defendants knew that federal law required them to pay their employees performing non-exempt duties overtime wages for hours worked in excess of forty per week.

25. Between September 2019 and August 2020 (a total of 52 weeks), Diane worked an estimated 4.5 to 7.5 hours of overtime per week. This estimate includes the estimated 2.5 hours per week that New Image did not pay for lunch; Diane usually worked during her lunch time, but New Image did not pay her for that time:

    A. Between September 2019 and March 2020, Defendants failed to pay Diane for the 7.5 hours per week of overtime that she estimated she worked during these 30 weeks or $11,846.

    B. Between April 2020 and July 2020, Defendants failed to pay Diane for the 4.5 hours per week of overtime that she estimated she worked during these 17 weeks or $3,013.

    C. For August 2020, Defendants failed to pay Diane for the 5.5 hours per week of overtime that she estimated she worked during these 4 weeks or $866.

    D. Defendants owe Diane a total of $15,725 for the time worked in overtime pay described in this Paragraph.

26. Diane was not paid any overtime wages at the required rate of one and a half times her regular rate of pay for any of the hours worked in excess of 40 hours in each of the weeks in Paragraph 25.

27. Diane is entitled to recover her unpaid overtime compensation and an equal amount as liquidated damages.

28. Diane is entitled to recover her attorneys' fees incurred herein pursuant to 29 U.S.C. § 216.

29. Defendants' failure to pay Diane overtime wages for her work in excess of 40 hours per week was willful, intentional and without justification or authorization. As a result, Defendants owe Diane $15,725 in liquidated damages.

30. The individual Defendants are personally liable for failing to pay Diane overtime.

31. Diane is entitled to recover her unpaid overtime compensation and an equal amount as liquidated damages.

32. Diane is entitled to recover her attorneys' fees incurred herein pursuant to 29 U.S.C. § 216.

33. Under 29 U.S.C. § 211, Defendants are required to keep accurate employment records. For all relevant times, Defendants required Diane to clock in and out daily which caused a record of the hours Diane worked.

### Demand for Jury Trial

34. Diane demands a trial by jury pursuant to the Seventh Amendment of the United States Constitution, and Federal Rule of Civil Procedure 38(b) and 39(a).

### Relief Sought

35. Based upon the forgoing, Diane requests judgment and orders granting her the following relief against the Defendants:

**Count One:**
**FLSA Overtime Violation**
**29 U.S.C. § 201** *et seq.*
**(against all Defendants)**

36. Diane repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

37. At all relevant times, New Image was an employer covered under the FLSA pursuant to 29 U.S.C. § 201, *et seq.*

38. At all relevant times, Diane was an employee covered under the FLSA.

39. Diane has consented in be a party in writing, pursuant to 29 U.S.C. § 216(b). See below.

40. New Image failed to pay Diane for approximately $15,725 of overtime worked.

41. Diane is entitled to double the amount due ($31,450) under the FLSA because New Image did not act in good faith and does not have any objectively reasonable grounds for failing to pay Diane her normal hourly rate for all overtime hours.

42. New Image's conduct was willful.

43. The individual defendants are personally liable for failing to pay Diane overtime.

44. Diane is entitled to recover her unpaid overtime compensation and an equal amount as liquidated damages.

45. Diane is entitled to recover her attorneys' fees incurred herein pursuant to 29 U.S.C. § 216.

WHEREFORE, Diane requests Judgment against Defendants as follows:

46. For unpaid overtime wages;

47. For pre-judgment and post-judgment interest on the above amounts at the highest legal rate;

48. For liquidated damages;

49. For reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b);

50. For all costs of suit; and

51. For such other and further relief as is proper and just.

Respectfully submitted this 23rd day of December, 2020.

**THE HOUK LAW FIRM**

By    /s/ Christopher R. Houk
        Christopher R. Houk
        *Attorney for Diane Bonitatibus*

Consent Form

I hereby consent to be a plaintiff in this case. I understand that this case is brought under the Fair Labor Standards Act, 29 USC § 201, *et seq.*, in the above captioned matter.

Diane Bonitatibus (Dec 23, 2020 16:12 MST)     12/23/20

Diane Bonitatibus     Dated

# Complaint v5

Final Audit Report                                                                 2020-12-23

| | |
|---|---|
| Created: | 2020-12-23 |
| By: | James Montanez (jmontanez@houklawfirm.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAUE41cLm0b6tirZ0hdndCWbemPjsWtFtX |

## "Complaint v5" History

- Document created by James Montanez (jmontanez@houklawfirm.com)
  2020-12-23 - 10:16:13 PM GMT- IP address: 108.170.45.34

- Document emailed to Diane Bonitatibus (dibonitatibus@gmail.com) for signature
  2020-12-23 - 10:16:35 PM GMT

- Email viewed by Diane Bonitatibus (dibonitatibus@gmail.com)
  2020-12-23 - 10:16:43 PM GMT- IP address: 66.249.84.65

- Document e-signed by Diane Bonitatibus (dibonitatibus@gmail.com)
  Signature Date: 2020-12-23 - 11:12:22 PM GMT - Time Source: server- IP address: 174.238.13.208

- Agreement completed.
  2020-12-23 - 11:12:22 PM GMT

Adobe Sign